**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALBERTA QUIAH, : <br> : <br> Plaintiff, : <br> : **CIVIL ACTION** <br> v. : **No. 19-4630** <br> : <br> THE DEVEREUX FOUNDATION, INC., : <br> ET AL., : <br> : <br> Defendants. : | |

McHUGH, J.                                                                                                          September 22, 2020

**MEMORANDUM**

      This is a case brought by a former employee of a care facility for developmentally disabled individuals who was relentlessly pursued for alleged thefts from her former employer. This is Plaintiff Alberta Quiah's Third Amended Complaint against Defendants, which include the Devereux Foundation, the Easttown Township Police Department and its officer James Sesher, Chester County, and various prosecutors from the Office of the District Attorney of Chester County. I dismissed the claims in her Second Amended Complaint without prejudice in an earlier Memorandum Opinion, 2020 W.L. 3402422 (June 19, 2020 E.D. Pa.). Plaintiff now presents the same core allegations with a different emphasis. Specifically, Plaintiff has added a claim for abuse of process, and has also supplemented her averments regarding the conditions of her release before she was criminally tried and exonerated.

      Although these amendments provide more substance to Plaintiff's alleged violations of her liberty interests, they remain insufficient to render Plaintiff's claims viable under federal law. I am therefore compelled to grant Defendants' Motion to Dismiss her federal claims, this time with prejudice. But I will once again dismiss Plaintiff's supplemental state law claims without

prejudice for consideration by Pennsylvania courts, where they may very well stand on stronger footing.

## I. Relevant Background

The facts as pleaded in Plaintiff's Second Amended Complaint and Third Amended Complaint are nearly identical, and so I will not fully recapitulate my summary of them from the prior Opinion. *See* Memorandum Opinion, ECF 39 at 2-7. The gravamen of both Complaints is that Plaintiff was fired by her former employer, the Devereux Foundation, based on their deliberately lodging false allegations against Plaintiff for having stolen funds earmarked for clients. Plaintiff further alleges that the remaining Defendants were complicit in Devereux's scheme to blame and extort Plaintiff for repayment of the purportedly embezzled funds, and that the flimsiness of the case against her was at all times apparent. Plaintiff points to her ultimate exoneration by a criminal jury as vindication for her position—in fact, Plaintiff pleads that the trial judge told the jury he would have been required to overturn their verdict if they had found Plaintiff guilty. Third Amended Complaint ¶ 203, ECF 42.

The primary differences in the Third Amended Complaint come in paragraphs 126 and 127, where Plaintiff further expands upon her allegations regarding the events that occurred after the December 2, 2015 Preliminary Hearing before the Magistrate Judge. Specifically, after the charges of Theft by Unlawful Taking, Theft by Deception, and Receiving Stolen Property were held over by the Magistrate, Plaintiff alleges that she was released on unsecured bail of $2500. Third Amended Complaint ¶ 126.[1] Furthermore, Plaintiff avers she was ordered to report to the Tredyeffrin Township Police Department, where she was held between forty-five minutes to an hour for fingerprinting. *Id.* As a condition of her bail, she had to regularly report the status of

---

[1] In her Second Amended Complaint, Plaintiff alleged only that she was released on her own recognizance.

her case to Chester County Pretrial Services. *Id.* ¶ 127. Plaintiff also had to attend fourteen pretrial listings, each one requiring approximately three hours of travel and a forty-mile round trip. *Id.* ¶ 149.

## II.   Standard of Review

In this Circuit, motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) are governed by the well-established standard set forth in *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III.   Discussion

Plaintiff fails to state claims under federal law against the Defendants for multiple reasons. First, Defendant Devereux is not a state actor for the purposes of 42 U.S.C. § 1983. Second, Assistant District Attorney Defendants Alexander Gosfield and Samantha Ryan have absolute immunity from suit, given that they were engaged in prosecutorial, rather than investigative or administrative functions, during the period in question. Additionally, despite her expanded factual averments regarding the pretrial requirements she was subject to, Plaintiff still has not pleaded allegations sufficient to show a Fourth Amendment seizure as required for her malicious prosecution claim, and Plaintiff cannot make out a successful § 1983 abuse of process against any of the governmental Defendants. Consequently, as was the case before, her *Monell* and conspiracy claims necessarily fail in the absence of any underlying federal violations. I will take each part of the analysis in turn.

### A.   Defendant Devereux is not a state actor, and therefore not liable under § 1983.

To prevail under 42 U.S.C. § 1983, Plaintiff must show that Devereux was acting under the color of state law. In analyzing whether a non-governmental party's action was taken under the color of state law, courts determine whether the action may "be fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). There are two prongs to the

"fair attribution" test: first, the conduct responsible for the alleged deprivation must have been "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible"; and second, "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id*.; *see also Am. Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting both prongs of the *Lugar* test). Plaintiff is able to clear the first hurdle of the *Lugar* test, because the allegations center around Devereux's alleged abuse of the state-created criminal process. Plaintiff's claim founders, however, at the second part of the test, as Devereux not a "state actor" for the purposes of § 1983.

In determining whether a party is a state actor under § 1983, the Third Circuit applies the principles that define state action under the Fourteenth Amendment. *See Leshko v. Servis*, 423 F.3d 337, 339 (3d. Cir 2005) ("We consider actions 'under color of law' as the equivalent of 'state action' under the Fourteenth Amendment.") (quoting *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982)). The primary question guiding the inquiry is whether "there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id*. (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). Separately, the Court of Appeals has made reference to "three broad tests generated by Supreme Court jurisprudence" that it looks to in determining whether state action is present:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose,* 589 F.3d 626, 646 (3d. Cir. 2009) (internal quotations omitted) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d. Cir. 1995)).

It is worth echoing the Third Circuit's characterization of state action doctrine as "labyrinthine." *Leshko,* 423 F.3d at 338. Even while articulating the inquiry in terms of the existence of a close nexus between the state and the challenged action, the *Leshko* Court acknowledged that there is "no 'simple line' between states and private persons." *Id*. at 339 (quoting *Brentwood Acad.*, 531 U.S. at 295). In my view, the *Leshko* Court's analysis of state action cases is largely complementary with the "broad tests" the Third Circuit previously identified in *Mark* and *Kach*. Furthermore, both *Leshko* and *Kach* emphasize that the state action inquiry is fact-specific, and thus resistant to fixed categorization. *Leshko*, 423 F.3d at 339; *Kach*, 589 F.3d at 646. Indeed, in attempting to answer the question, courts in the Third Circuit "attempt to align the case at hand with the Supreme Court case most factually akin to it," further reinforcing the case-by-case nature of the analysis. *Leshko*, 423 F.3d at 339.

In her Third Amended Complaint, Plaintiff asserts that the "Commonwealth has contracted with and delegated to Devereux to undertake" its duties "to provide custody, care, and habilitation services, including residential services, to its mentally challenged citizens" pursuant to the Mental Health and Intellectual Disability Act of 1966, 50 P.S. § 4101 et. seq. Third Amended Complaint ¶¶ 10-11. Plaintiff further alleges that this activity is the exclusive prerogative of the state. *Id*. ¶ 14. This contractual relationship is not, however, sufficient on its own to establish state action.

In *Zarebicki v. Devereux Foundation*, my colleague Judge Goldberg engaged in an extensive and persuasive analysis in concluding that Devereux is not a state actor. No. 09–6205, 2011 WL 2582140 (E.D. Pa. June 30, 2011). Surveying relevant Supreme Court and Third

Circuit precedent, he emphasized that in order to find state action, the delegated activity must be one that was "'traditionally and exclusively' the province of the state." *Id.* at *3 (quoting *Leshko*, 423 F.3d at 343). Though it is true that Pennsylvania has enacted a statutory obligation to provide care for its citizens with mental disabilities, it does not inevitably follow that such a duty has been traditionally and exclusively its prerogative. Private citizens and organizations have engaged in the caretaking of adults with intellectual disabilities since the creation of the Commonwealth. *Id.* at *5 (collecting cases). Courts have also determined state action to be absent when states have delegated duties much closer to the traditional obligations of the sovereign, such as education. *See, e.g.*, *Rendell-Baker*, 457 U.S. at 840-842 (holding that a private, nonprofit educational institution that specialized in aiding students that struggled in traditional public-school settings pursuant to state law was not a state actor); *Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 166 (3d Cir. 2001) (similarly holding that a private school that provided educational services to troubled youth, some of whom were in its custody pursuant to a state agency's decision, was not a state actor).

     Plaintiff also asserts that the "funding, licensing, and regulation of Devereux by the Commonwealth make Devereux a state actor." Third Amended Complaint ¶ 15. However, receipt of funds and being subject to regulation alone are insufficient. *Rendell-Baker* is once again instructive, as the private school defendant in that case received "virtually all" of its income from the state and was subject to extensive regulations, and yet was still determined not to be a state actor. *Rendell-*Baker, 457 U.S. at 840; *see also Blum v. Yaretsky*, 457 U.S. 991, 1011 (1982) (holding that private nursing home's receipt of "state subsidization of the operating and capital costs of the facilities, payment of the medical expenses of more than 90% of the

patients in the facilities, and the licensing of the facilities by the State" was insufficient to establish state action).

Finally, because Plaintiff alleges the existence of a conspiracy between Devereux and the remaining state Defendants, state action could potentially be implicated through a theory of joint participation.  "Although not an agent of the state, a private party who willfully participates in a joint conspiracy with state officials to deprive a person of a constitutional right acts 'under color of state law' for purposes of § 1983." *Abbott v. Latshaw*, 164 F.3d 141, 147-48 (3d Cir. 1998). In order to demonstrate joint participation, Plaintiff must allege "the existence of a pre-arranged plan between the police and a private individual or entity by which the police substituted the judgment of private parties for their own official authority." *Castillo v. Guzley*, No. 19-cv-4002, 2019 WL 5068571, at *5 (E.D. Pa. Oct. 8, 2019) (quoting *Cruz v. Donnelly*, 727 F.2d 79, 80 (3d Cir. 1984)).  Without "allegations . . . tending to show such a plan, a private party cannot be said to have engaged in the concerted or joint action with the police necessary to bring them within the scope of a § 1983 claim." *Id.*; *see also Cahill ex rel. L.C. v. Live Nation*, 512 Fed. App'x. 227, 230 (3d Cir. 2013) (citing *Cruz* and noting that "a private entity may only be deemed a state actor, and therefore be liable under § 1983, for the actions of police officers if (1) the private entity has a 'prearranged plan' with the police officers, and (2) under the plan, the police officers will 'substitute their [own] judgment' with that of the private entity's.").

The question is whether Plaintiff's theory of conspiracy is sufficiently plausible. Plaintiff does not allege any preexisting relationships between Devereux and the governmental Defendants and has not identified any apparent motive that would support an inference that  they knowingly abetted Devereux's bad-faith conduct.  Plaintiff specifically alleges that Devereux and ETPD's Detective Sesher were aware of and discussed the "obvious lack of proof" against

7

Plaintiff, and thus decided to file charges through a Criminal Complaint rather than obtain an arrest warrant from a Magistrate Judge because of the weakness of the case. Third Amended Complaint ¶ 89. But many of the other factual averments in the Complaint undercut the existence of a conspiracy. For instance, Plaintiff states that Detective Sesher created a Supplemental Narrative report in or around June 22, 2015 detailing the various pieces of evidence—Devereux's own investigative report, witness statements, Plaintiff's statement to Devereux, and other items—received by the ETPD. *Id*. ¶ 87. Sesher reached out shortly thereafter to Plaintiff's counsel on July 2, 2015 to set up a meeting with Plaintiff to discuss Devereux's allegations. *Id*. ¶ 97. Through counsel, Plaintiff refused this interview with Sesher. *Id*. ¶ 98. Over two months later, on September 4, 2015, Sesher contacted Plaintiff's counsel to inform him that a criminal complaint would be filed. *Id*. ¶ 105. The fact that Sesher compiled his own summary of the evidence, wanted to meet with Plaintiff, and waited some months from the onset of Devereux's allegations before filing a criminal complaint, all undermines Plaintiff's contention that a prearranged plan existed between Sesher and Devereux to frame Plaintiff. It also undercuts the core premise that Sesher merely "rubberstamped" a report Devereux had compiled to support its charges of Plaintiff's alleged wrongdoing. *Id.* ¶ 91Finally, the Magistrate Judge's decision at the Preliminary Hearing to hold over three charges against Plaintiff for trial suggests that the filing of a criminal complaint was not done in the complete absence of probable cause.

As to the prosecutor defendants, Plaintiff avers that ADA Gosfield also "had been briefed on the lack of evidence" in the case after it was assigned to him, but that he "knowingly acquiesced to the misuse of and abuse of the criminal process for the purpose of coercing Plaintiff's payment" to Devereux. *Id.* ¶¶ 130-31. Plaintiff further complains that ADA Ryan

similarly failed to dismiss the charges when the case was assigned to her, and in fact Ryan amended the charges "to include 1 additional count each of Theft by Deception, Theft by Unlawful Taking, and Receiving Stolen Property." *Id.*

The prosecutors did not get involved in the case until the Preliminary Hearing when it was well underway. In email correspondence with Plaintiff's counsel regarding Plaintiff's concerns that Devereux was not being adequately responsive to her subpoena requests, ADA Gosfield explained that he would recommend the withdrawal of charges if he determined that "the complainant is intentionally hiding documents material to the outcome of the case" and told Plaintiff's counsel to "feel free" to file a motion to compel production from Devereux, as he lacked standing to address the matter. *Id.* ¶ 162. This exchange, along with the timing of his and Ryan's involvement in the case, would indicate that the ADAs were acting in their independent capacities as prosecutors, rather than private counsel for Devereux. The Third Amended Complaint simply lacks sufficient allegations to show that Devereux was engaged in a conspiracy with the governmental Defendants, and I therefore find that there is no state action on the part of Devereux. Plaintiff's § 1983 claims against Devereux must be dismissed accordingly.

### B. ADA Defendants Gosfeld and Ryan Have Absolute Immunity

Plaintiff's § 1983 claims against Defendants Gosfeld and Ryan are barred by absolute immunity, as the challenged activities were performed while they were in a "quasi-judicial" role. *See Yarris v. County of Delaware*, 465 F.3d 129, 135 (3d Cir. 2006) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976)). The Supreme Court has held "that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." *Imbler*, 424 U.S. at 431. Thus, acts including "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made" are entitled to absolute

9

immunity.  *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).  This immunity does not apply, however, to a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings." *Id.*

Accordingly, "[a]nalysis of prosecutorial immunity questions thus has two basic steps, though they tend to overlap. The court must ascertain just what conduct forms the basis for the plaintiff's cause of action, and it must then determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." *Schneyder v. Smith*, 653 F.3d 313, 332 (3d Cir. 2011) (citing *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008)).  The Court of Appeals, however, has "recognized that, presumably by virtue of their egregiousness, some acts fall wholly outside the prosecutorial role no matter when or where they are committed."  *Odd*, 538 F.3d at 211.  "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question."  *Burns v. Reed*, 500 U.S. 478, 486 (1991).

It is important to observe that the conduct being challenged by Plaintiff all took place after the Magistrate Judge held over her charges for trial.  While not dispositive, "the period during which prosecutors are most likely functioning in a 'quasi-judicial' capacity is the time between indictment and dismissal, acquittal, or conviction."  *Odd*, 538 F.3d at 211 (citing *Yarris*, 465 F.3d at 139).  The allegations in Plaintiff's Third Amended Complaint center upon the district attorney Defendants' handling of the evidence they collected leading up to her trial date, along with their purported failure to determine that charges should have been dropped against Plaintiff due to the weakness of the case.

Plaintiff claims that ADA Gosfield in particular "conducted an entirely new investigation into Plaintiff's conduct" in the course of collecting evidence, and that Gosfield interposed himself between Devereux and Plaintiff in providing documents that were responsive to a subpoena request Plaintiff had served upon Devereux.  It is apparent from the Third Amended Complaint, however, that the records gathered by Gosfield were relevant to the core issues involved in the pending criminal case against Plaintiff, namely whether Plaintiff was responsible for the theft of funds from Devereux.  Moreover, to the extent Gosfield did improperly withhold evidence forwarded to him by Devereux, Plaintiff avers that Ryan subsequently produced the information. Most importantly, the Third Circuit has squarely held that "prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." *Yarris*, 465 F.3d at 137. Consequently, ADAs Ryan and Gosfield have met their burden in showing that they are entitled to absolute immunity, and Plaintiff's federal claims against them must be dismissed.

### C. The Constitutional Claims for Malicious Prosecution and Abuse of Process Fail as to the Remining Governmental  Defendants

#### 1. *Malicious Prosecution*

Plaintiff cannot state a claim for malicious prosecution under § 1983 for the same reasons detailed in my prior Memorandum Opinion.  To recap, the elements of a federal malicious prosecution claim in the Third Circuit are that:

> (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003).  Despite incorporating greater detail and scope to the pretrial restrictions that Plaintiff was subject to, the allegations

11

contained in the Third Amended Complaint nonetheless remain insufficient to meet the fifth element of the claim.

As explained in my earlier memorandum opinion, two Third Circuit cases set the bounds for determining when an individual has suffered a deprivation of liberty consistent with the concept of a Fourth Amendment seizure: *Gallo v. City of Philadelphia*, 161 F.3d 217 (3d Cir. 1998), and *DiBella v. Borough of Beachwood*, 407 F.3d 599 (3d Cir. 2005). In *Gallo*, the plaintiff brought a malicious prosecution claim against the City of Philadelphia and assorted federal and municipal officials after being acquitted of charges that he deliberately set fire to his business. *Gallo*, 161 F.3d at 218. After indictment, the plaintiff was released on a $10,000 personal recognizance bond but was not allowed to travel beyond Pennsylvania or New Jersey. *Id.* at 219. Moreover, the plaintiff had to contact Pretrial Services on a weekly basis. *Id.* These requirements lasted over eight months, until the conclusion of his trial. *Id.*

Although the plaintiff in *Gallo* was not ever arrested, detained, or handcuffed, the Court determined that these pretrial restrictions were sufficient to show that plaintiff was seized, defining seizure as "a show of authority that restrains the liberty of a citizen" or "government termination of freedom of movement *intentionally applied*." *Id*. at 223 (emphasis added) (citations omitted). In adopting these definitions, the Third Circuit embraced the reasoning of Justice Ginsburg's concurrence in *Albright v. Oliver*, 510 U.S. 266 (1994), which views seizure as continuing from the moment of initial physical custody to non-physical restraints imposed upon defendants to secure their subsequent appearances in court. *Albright*, 510 U.S. at 278 (Ginsburg, J., concurring) ("The common law thus seems to have regarded the difference between pretrial incarceration and other ways to secure a defendant's court attendance as a distinction between methods of retaining control over a defendant's person, not one between

12

seizure and its opposite."); *see also Schneyder*, 653 F.3d at 320 ("[T]he difference between detention in jail, release on bond, and release subject to compliance with other conditions is in the *degree* of restriction on the individual's liberty, not in the *kind* of restriction.") (citations omitted). Courts must therefore look to the specific restrictions at issue in each case to determine whether a seizure has occurred.

Here, Plaintiff alleges that after her preliminary hearing, she was released on unsecured bail of $2500; ordered to appear at the Tredyeffrin Township Police Department where she was confined and fingerprinted for between forty-five minutes to an hour; and that she was required to attend fourteen pre-trial listings between February 2016 and August 2017, each of which necessitated approximately three hours of travel time for the forty-mile round trip; and regularly report to Chester County Pretrial Services. Third Amended Complaint ¶ 126-27. Plaintiff further alleges that these requirements were *de facto* travel restrictions, as she was not free to relocate while charges were pending against her, which altogether took over two years to be resolved.

I do not wish to minimize the impositions placed on Plaintiff, which she avers had significant deleterious effects on her liberty interests. They do not, however, amount to a Fourth Amendment seizure as required by Third Circuit precedent.[2] The travel restrictions analyzed by *Gallo* were intentionally and expressly applied, whereas the alleged restrictions experienced by

---

[2] Plaintiff continues to maintain that her malicious prosecution claim can be brought under the Fourteenth as well as Fourth Amendment, citing *Halsey v. Pfeiffer*, 750 F.3d 273, 290-91 (3d Cir. 2014), for the proposition. But the Court of Appeals did not hold that malicious prosecution claims could be brought under both Amendments—rather, the Court was examining the temporal dimensions of claims that criminal defendants could bring under both Amendments generally. *See Halsey*, 750 F.3d at 291 (stating that "[The Fourth Amendment's] protection against unlawful seizures extends only until trial" but "[t]he guarantee of due process of law, by contrast, is not so limited as it protects defendants during an entire criminal proceeding through and after trial."). More specifically, *Halsey*'s core holding was that stand-alone fabricated evidence claims could be brought under the Fourteenth Amendment. *Id.* at 294 ("[W]e hold that if a defendant has been convicted at a trial at which the prosecution has used fabricated evidence, the defendant has a stand-alone claim under section 1983 based on the Fourteenth Amendment if there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted."). In summary, within the Third Circuit, section 1983 malicious prosecution claims continue to be analyzed under the Fourth Amendment alone.

Plaintiff were byproducts of the pending proceedings.  Plaintiff cites to *Black v. Montgomery County*, 835 F.3d 358 (3d Cir. 2016), as an example of the Court determining that a plaintiff that was required to post unsecured bail, be fingerprinted, and travel repeatedly to attend pre-trial hearings suffered a Fourth Amendment seizure, although no travel restrictions were imposed. The unsecured bail in *Black*, however, was at a significantly higher amount of $50,000, and, more crucially, the plaintiff was required to fly back and forth from her home in California to Pennsylvania twelve times to attend pre-trial hearings to avoid issuance of a bench warrant. *Black*, 835 F.3d at 362-63.  The heavy burden imposed by this arrangement left a significant impression upon the Court of Appeals.  *Id.* at 368 (noting that "Black was forced to travel this great distance—presumably at great expense—a dozen times to defend herself" and that "[i]n contrast to *Gallo* and *DiBella*, Black did not live in the jurisdiction where she was tried and if she did not travel, she faced serious charges and a possibility of incarceration.").  While undoubtedly suffering from disruptions to the normal course of her life, Plaintiff does not plead such analogous impositions to rise to the level of a Fourth Amendment seizure, and thus her malicious prosecution claim fails.

      2.  *Abuse of Process*

"[A] section 1983 claim for malicious abuse of process lies where 'prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law.'" *Rose v. Bartle*, 871 F.2d 331, 350 n.17 (3d Cir. 1989) (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1217 (3d Cir. 1977)).  "The claim can be maintained '[w]hen process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process.'"  *Felker v. Christine*, 796 F. Supp. 135, 142 (M.D. Pa. 1992) (quoting *Brown v. Johnston*, 675 F. Supp. 287, 290 (W.D. Pa. 1987)).  In contrast to a

malicious prosecution claim, "presence or absence of probable cause is irrelevant." *Jennings*, 567 F.2d at 1217.

As discussed above, Plaintiff essentially pleads a conclusion, and the specific facts pleaded cut against rather than support an inference that the governmental Defendants initiated and maintained the prosecution against her to serve Devereux's allegedly unlawful objectives. Therefore, her abuse of process claim must be dismissed.

### D. Because Plaintiff has not pled an underlying violation of federal law, her § 1983 *Monell* claim fails

Plaintiff also seeks liability for Chester County and Thomas Hogan in his official capacity as the Chester County District Attorney under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Once again, this claim fails, as there can be no claim under *Monell* in the absence of an underlying violation of civil rights. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (dismissal of § 1983 claims against Mayor required dismissal of *Monell* claims based upon the same factual allegations of unlawful conduct).

### E. Because Plaintiff has not pled an underlying violation of federal law, her conspiracy claim under 42 U.S.C. § 1985 fails

In Count V of her Complaint, Plaintiff pleads that all Defendants have violated 42 U.S.C. §§ 1983 and 1985, with the subheader "Conspiracy to Deprive of Civil Rights." Third Amended Complaint ¶¶ 242-43. With respect to § 1983 itself, it is axiomatic that it "does not create substantive rights; rather it merely provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Marasco*, 318 F.3d at 505. Because her federal malicious prosecution and abuse of process claims fail, Plaintiff cannot invoke § 1983 in a vacuum as the basis for a claim.

As to conspiracy, Section 1985 contains three subsections, and § 1985(3) is concerned with the deprivation of rights or privileges. Once more, I will assume Plaintiff is attempting to bring a claim under that specific subsection. *See* 42 U.S.C. § 1985. In order to state a claim under § 1985(3), a plaintiff must allege:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting *United Brotherhood of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 (1983)). As discussed at length above, Plaintiff is unable to show the existence of a conspiracy between the Defendants to deprive her of her civil rights. Even assuming for the purposes of this motion that Plaintiff has satisfied the first three elements of such a claim, Plaintiff cannot satisfy the final element because she has not suffered the deprivation of any federal right or privilege.

### F. Plaintiff's remaining state law claims are dismissed without prejudice

Because I have dismissed all Plaintiff's federal law claims, I decline to exercise supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3). The Third Circuit has held that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

As stated at the outset, there are differences under Pennsylvania law that might provide Plaintiff with a stronger legal basis to challenge the alleged conduct of Defendants. I remain

16

concerned by what Ms. Quiah, alleges was Devereux's seemingly relentless pursuit of her in the vein of Victor Hugo's Inspector Javert. After I dismiss Plaintiff's claims on jurisdictional grounds, she may elect to transfer the action to state court under 42 Pa C.S. § 5103(b). *See also* 28 U.S.C. § 1367(d); *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018).

## IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss must be **GRANTED**. An appropriate Order follows.

/s/ Gerald Austin McHugh
United States District Judge